Todd Blanche
Deputy Attorney General of the United States
Eastern District of Washington
Brandon L. Pang
Assistant United States Attorney
Post Office Box 21
Richland, WA 99352
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 05 2026

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 4:24-CR-6029-MKD-1 |
| Plaintiff, | Plea Agreement |
| v. | Fed. R. Crim. P. 11(c)(1)(C) |
| RISLEY ROBERT BRADSHAW, | |
| Defendant. | |

Plaintiff United States of America, by and through Brandon L. Pang, Assistant United States Attorney for the Eastern District of Washington, and Defendant Risley Robert Bradshaw ("Defendant"), both individually and by and through Defendant's counsel, Federal Defender Jennifer Barnes, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 3 of the Indictment filed on October 18, 2024, which charges Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), a Class C felony.

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment of up to 20 years;

PLEA AGREEMENT - 1

  b. a term of supervised release of not less than 5 years and up to a lifetime;

  c. a fine of up to $250,000;

  d. a $17,000 assessment pursuant to 18 U.S.C. § 2259A(a)(3);

  e. sex offender registration;

  f. restitution; and

  g. a $100 special penalty assessment.

2. Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, up to the following terms:

  a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

  b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

  c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

PLEA AGREEMENT - 2

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    Defendant understands that this Plea Agreement contains sentencing recommendations pursuant to Fed. R. Crim. P. 11(c)(1)(C). As a result, Defendant may withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

PLEA AGREEMENT - 3

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.    the right to a jury trial;

b.    the right to see, hear and question the witnesses;

c.    the right to remain silent at trial;

d.    the right to testify at trial; and

e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), the United States would have to prove the following beyond a reasonable doubt.

PLEA AGREEMENT - 4

    a.    *First*, beginning on or about November 24, 2020, within the Eastern District of Washington, Defendant knowingly possessed material that contained visual depictions of minors engaged in sexually explicit conduct, including image and videos files of minors under twelve years of age;

    b.    *Second*, Defendant knew each visual depiction contained in the material was of a minor engaged in sexually explicit conduct;

    c.    *Third*, Defendant knew that production of such visual depictions involved the use of a minor(s) engaged in sexually explicit conduct; and

    d.    *Fourth*, the material had been mailed, shipped or transported using any means or facility of interstate or foreign commerce;

<u>or</u>

The material had been mailed, shipped or transported in or affecting interstate commerce or foreign commerce by any means, including by computer;

<u>or</u>

The material was produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

7.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes,

PLEA AGREEMENT - 5

additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

On September 14, 2020, from approximately 02:15 a.m. up and through 10:58 a.m. pacific standard time (PST), Federal Bureau of Investigation (FBI) Special Agent (SA) Lee McEuen received 48 files of suspected child pornography over a Peer to Peer (P2P) computer program as part of an FBI undercover operation from a user at internet protocol (IP) address 24.181.143.156. The user provided name for each of these downloads was "Nunya Business" and the user hash was D571A0C7280EEB4AA-1D1485ABD146FFE.

One of the files was received at 08:34 AM on September 14, 2020, and was titled, "LC-217119.jpg". The image depicted a naked prepubescent girl facing the camera on her knees, from the belly button to the knees. Her groin was centered in the image. She was in a tent and the image had a blue tint to it.

SA McEuen served a subpoena to Charter Communications Inc. (Charter) for subscriber information for IP address 24.181.143.156 for September 14, 2020, at 8:34 a.m. PST. On September 18, 2020, Charter responded to the subpoena and provided the following information:

Target IP 24.181.143.156 on 9/14/2020 at 8:34 AM Pacific was registered to Bradshaw Sculpture at 517 N. Jean St Ofc. Kennewick, WA 99336, email prozacqueen@hotmail.com and bradshawsculpture@gmail.com, telephone number 509-212-2513, MAC# 48F7C0FEA6AD.

According to Charter, the above IP address had been assigned to this subscriber since August 6, 2020.

Because it appeared that the IP address had only been assigned to the above subscriber for approximately 5 weeks, SA McEuen reviewed his P2P program's download history to determine whether he had previously obtained any suspected

PLEA AGREEMENT - 6

child pornography from the same user hash value, but under a different IP address. SA McEuen observed that on June 02, 2020, he had received a file titled "7yr Melissa Thai Child Prostitute Strip and Suck.mpg", which depicted a video of a prepubescent girl stripping and orally copulating an adult penis, from the same user hash, but via a different IP address.

SA McEuen also learned from his earlier investigations and downloads, that beginning on December 12, 2018, and continuing through November 26, 2019, a person using another IP address, 66.191.44.13, and a different user hash, but the username "Nunya" and the same P2P platform, distributed 31 files containing suspected child pornography images to SA McEuen. Charter was identified as the Internet Service Provider for IP address 66.191.44.13.

On March 08, 2019, a subpoena was served on Charter, requesting subscriber information for IP address 66.191.44.13 on February 28, 2019, at 9:23 p.m. PST (the time that SA McEuen had downloaded an image that he believed to be consistent with child pornography). On March 11, 2019, Charter responded to the subpoena and provided the following subscriber information:

The subscriber of IP address 66.191.44.13 on February 28, 2019, at 9:23 p.m. PST was "Stephanie Bradshaw", with a listed residence of "517 N. Jean St. Kennewick, WA 99336", an email address of "sstjohn1978@charter.net", a telephone number of 208-477-6417, and a MAC# of 30:B7:D4:cc:6f:5c.

FBI SA Michael Pratt (SA Pratt) subsequently sought a search warrant for the premises at 517 N. Jean Street, in Kennewick, Washington. Just prior to obtaining that warrant, SA McEuen advised that as recently as November 17, 2020, he had downloaded an image consistent with child pornography from IP address 24.181.143.156, the IP address associated with the above September 14, 2020, downloads.

PLEA AGREEMENT - 7

On November 19, 2020, the residential search warrant was approved; the warrant was executed at 7:00 a.m. on November 24, 2020. When FBI personnel arrived, no one was present at the residence and entry was not made. Telephonic contact was made with Jeremy Bradshaw, who indicated that he and his wife Stephanie were out on a walk. When they returned, they unlocked the front door to allow access to the residence. Stephanie Bradshaw called Risley Bradshaw (Defendant), who also lived at the location, and asked him to return, which he did. Jeremy Bradshaw, Stephanie Bradshaw, and Defendant were subsequently interviewed.

During his interview, Jeremy Bradshaw indicated that the Wi-Fi at the residence was locked and the ISP was Spectrum. Jeremy reported that Defendant had access to the Wi-Fi. Jeremy had no knowledge of P2P software. Jeremy had no knowledge or suspicions of illegal computer usage by Defendant and said that Defendant had no contact with children. With permission, SA McEuen accessed Jeremy's computer and saw that the current IP was 24.181.143.156, the same IP address from which SA McEuen downloaded child pornography in September and November, via the P2P program.

During Defendant's interview, which was recorded and conducted post-*Miranda* warning, Defendant indicated that he started viewing child pornography when he saw it in a chat room while still in the army at Fort Drum, New York and had viewed child pornography off and on since then. When he got out of the military, he moved in with his brother at 517 N. Jean Street, Kennewick and viewed child pornography. He then moved to Salem, Oregon for two months and viewed child pornography there, then moved back in with his brother and viewed child pornography. He used his laptop computer until a few weeks prior to the execution of the search warrant when it broke. He then used his tower computer until he purchased a new laptop. He had not set up P2P on his new laptop yet and it

PLEA AGREEMENT - 8

was clean of child pornography. Defendant provided his PIN and his password. Defendant denied ever using his cell phone to view child pornography. Defendant admitted that he used the P2P program utilized by SA McEuen in the undercover operation, and had previously used other P2P platforms, one of which was mostly for movies.

Defendant reported that he did not have any children of his own and no children visited the residence. He reported that he had not had sex with or touched a child under 18 years of age. Defendant stated that he was most interested in 13-, 14- or 15-year-old girls engaged in sex acts. Defendant reported that he masturbated to the images and then deleted them by putting them in the trash. Defendant advised that he was not interested in bondage or pain sex, but liked vaginal and oral sex images. He conducted searches using the terms, "PTHC", "Hussyfan", "Pedo", "Pedro Jack", R@Ygold", and "St. Petersberg". Defendant was familiar with the LS Model, Vicky and Jennifer series of images. Defendant admitted that he knew Peer to Peer (P2P) systems shared the images when downloaded and knew he was sharing the images in the default "Downloads" folder. Defendant further admitted that he left files there sometimes, but would eventually move them or delete them.

Defendant stated he did not use encryption or wiping software. He tried TOR but it was slow and hard to find images. Defendant admitted that he used the screen name "Nunya Bizness". He also reported that he transferred some child pornography images onto his thumb drive. Defendant denied ever sending images to anyone via email, Kik nor Snapchat.

During the interview, Defendant reviewed two days of download logs (11/16-17/2020) and signed them and acknowledged they appeared to be accurate with what he had downloaded or shared during that timeframe. Defendant reviewed two samples of child pornography from those downloads and wrote "Sample" and signed them acknowledging they were the type of images he

PLEA AGREEMENT - 9

downloaded but stated that he liked the older semi-pubescent images. Defendant stated he liked the young girls engaged in sex because of their innocence. Defendant stated he didn't want virgins but wanted newly pubescent girls.

During the search of Defendant's residence, a number of electronic devices were seized, including a Windows Vista Tower (1B5) and a black PNY thumb drive (1B13). During a subsequent review of all devices seized, child pornography was found on 1B5. Two images of child pornography were found on 1B13. In total, 460 images from known child pornography series were found on 1B13 and 1B5. Of these:

- 15 sets of photos (187 photos total) contained the word "Lexie" in the title, all featuring a prepubescent female in various states of dress and engaging in sex acts. One file, with filename "066 - LexieHC (5).jpg" depicts a nude prepubescent female on her back, blindfolded, engaging in sexual intercourse with an adult male. Filename "069 - LexieHC(8).jpg" depicts the same nude prepubescent female, blindfolded, orally copulating an adult male penis. There were files and/or artifacts indicating that Defendant had researched the underlying criminal case involving "Lexie" and her abuser.

- 50 filenames feature the word "Foutrac" and depict various prepubescent children nude and engaging in sex acts. Filename "foutrac 0062.jpg" depicts a clothed young girl orally copulating an adult male penis. Filename "foutrac 0036.jpg" depicts a nude prepubescent girl lying down holding an erect penis.

- 54 filenames feature the name "Lee Han" and depict two photo series of a young girl. In each series she is clothed at the beginning and fully nude by the end. Filename "Lee Han (51).jpg" depicts a pre- or semi-pubescent nude female standing facing the camera, with her vulva visible.

PLEA AGREEMENT - 10

- 76 filenames feature the word "ma_saori" and depict a photo series of a young girl, clothed at the beginning of the series and fully nude at the end. Filename "ma_saori68.jpg" depicts a nude pre- or semi-pubescent female laying on her stomach with her vulva and buttocks visible.

- 78 filenames feature the word "reona_m" and depict a photo series of a semi-pubescent young girl, clothed at the beginning of the series and fully nude at the end. Filename "reona_m070071.jpg" depicts a nude semi-pubescent female facing the camera with her vulva visible.

- Many of the remaining files of various filenames also depict prepubescent females in stages of undress and/or engaging in sex acts. Filename "168DF68-1.jpg" is a photo collage of 25 separate photos. Five of those photos depict young girls holding and/or orally copulating an erect penis. Eleven of them show close-ups of vulvas with no pubic hair, and seven of those eleven show an erect penis penetrating the vulva.

Of the 460 images bookmarked from 1B5 and 1B13, 299 constitute child pornography under federal law. 119 of the remaining photos are from a series containing child pornography, but the subject of the photo is mostly or fully clothed. Between December 12, 2018, and November 17, 2020, approximately 1,300 files of child pornography were downloaded from users "Nunya" and/or "Nunya Business" via the P2P filesharing program during the course of FBI undercover investigation.

Defendant stipulates and agrees that the image and video files he knowingly possessed, received, and distributed, constituted child pornography under federal law pursuant to 18 U.S.C. § 2256(8). Some of the image and video files depicted identified minor children, to include children under the age of 12, engaged in sexually explicit conduct, including but not limited to, the lascivious exhibition of the genitals and anus, sexual intercourse, and masturbation. Defendant further stipulates and agrees that he possessed and distributed said child pornography

PLEA AGREEMENT - 11

while he was present in the Eastern District of Washington on the dates alleged in the Indictment. Finally, Defendant stipulates and agrees that the child pornography files were transported using the internet, a means or facility of interstate or foreign commerce.

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Counts 1 and 2 of the Indictment filed on October 18, 2024, which charge Defendant with (Count 1) Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1) and (Count 2) Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A),(b)(1).

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Possession of Child Pornography is 18. U.S.S.G. § 2G2.2(a)(1).

b.    Special Offense Characteristics

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because the material involved a prepubescent minor who had not attained 12 years of age. U.S.S.G. § 2G2.2(b)(2).

PLEA AGREEMENT - 12

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because he knowingly engaged in distribution of images of child pornography. U.S.S.G. § 2G2.2(b)(3).

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because the offense involved the use of a computer for possession, receipt and distribution of the material. U.S.S.G. § 2G2.2(b)(6).

The United States and the Defendant agree that Defendant's base offense level is increased by 5 levels because the offense involved more than 600 images · when considering all relevant conduct. U.S.S.G. § 2G2.2(b)(7).

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

PLEA AGREEMENT - 13

### d.    Agreements Regarding Representations to the Court

The United States has a duty of candor to the tribunal.  If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

   i.  The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

   ii.  The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

   iii.  The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

   iv.  The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

PLEA AGREEMENT - 14

v.    The United States and Defendant may each respond to any arguments presented by the other;

vi.    In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

PLEA AGREEMENT - 15

ix.     Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

e.     No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

f.     Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.    Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will

PLEA AGREEMENT - 16

make in any proceeding that occurs after Defendant's original sentencing in the District Court.

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree to each recommend a sentence of 36 months (3 years) to 63 months in custody, to be followed by a term of Supervised Release. The United States and Defendant agree to make those sentencing recommendations to the Court. Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 63 months or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 36 months.

The United States and Defendant acknowledge that the imposition of any fine, restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

PLEA AGREEMENT - 17

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

11.    Supervised Release

The United States and Defendant each agree to recommend a term of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c.    Defendant must complete a mental health evaluation and follow any treatment recommendations of the evaluating professional which do not require forced or psychotropic medication and/or inpatient confinement, absent further order of the court. Defendant must allow reciprocal release of information between the supervising officer and treatment provider. Defendant must contribute to the cost of treatment according to his ability to pay.

PLEA AGREEMENT - 18

d.    Defendant shall report to the Probation Office any and all electronic communications service accounts, as defined in 18 U.S.C. § 2510(15) used for user communications, dissemination and/or storage of digital media files (i.e. audio, video, images). This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. Defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation. The Probation Office is permitted to access and search any accounts using Defendant's credentials pursuant to this condition only when reasonable suspicion exists that Defendant has violated a condition of his supervision and that the accounts to be searched contain evidence of this violation.

e.    Defendant shall not have any contact with any victim identified in the charging instrument or discovery in the above-captioned matter.

f.    Defendant shall not have any contact with any child under the age of 18 outside the immediate presence of an adult and approved in advance by the Probation Officer. Defendant shall not have any contact or communications of any kind with any child via telephone, the Internet, or any social media platform. Defendant shall immediately report to the Probation Officer any unauthorized contact with anyone under 18 years old.

g.    Defendant shall allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of

PLEA AGREEMENT - 19

data from any computer, and any personal computing device that Defendant possesses or has access to, including any internal or external peripherals.  This may require temporary removal of the equipment for a more thorough inspection. Defendant shall not possess or use any data encryption technique or program.  Defendant shall purchase and use such hardware and software systems that monitor Defendant's computer usage, if so directed by the Probation Officer.

h.    Defendant shall not reside or loiter within 1000 feet of places where children under the age of 18 congregate, which includes primary and secondary schools, schoolyards, parks, playgrounds, shopping malls, daycare centers, carnivals, recreation centers, and arcades.

i.    Defendant shall not possess or manufacture any sexually stimulating, sexually explicit or sexually oriented material including videos, magazines, photographs, computer generated depictions, or any other matter that depicts "sexually explicit conduct" involving children or adults, as defined by 18 U.S.C. § 2256(2).  Defendant shall not enter or be present at any establishment involved in the sex industry, including adult book stores, massage parlors, escort services, or strip clubs. Defendant shall not use any sex-related adult telephone number, Internet access, or social media platform.  Defendant shall provide to the Probation Officer all of Defendant's telephone and Internet records to monitor compliance, at the direction of the Probation Officer.

j.    Defendant shall register as a sex offender, according to the laws of each state in which Defendant resides, is employed, or is

PLEA AGREEMENT - 20

attending school.  Defendant shall provide verification of compliance with this requirement to the Probation Officer.

k.    Defendant shall complete a sex offender evaluation, which may include periodic psychological, physiological, polygraph, plethysmography testing, and completion of the ABEL assessment, at the direction of the Probation Officer.

l.    Defendant shall participate and successfully complete an approved state-certified sex offender treatment program, including compliance with all lifestyle restrictions and treatment requirements of the program.  Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider.  Defendant shall contribute to the cost of treatment according to Defendant's ability.

12.    Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine.  Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.    Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish to the United States all right, title and interest in all assets listed herein, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets, including, but not limited to the following:

a.    a windows Vista Tower Computer; and

b    a black PNY thumb drive.

PLEA AGREEMENT - 21

Defendant stipulates that Defendant is the sole owner of the assets listed above and that no one else has an interest in these assets.

Defendant acknowledges that the assets listed above, which Defendant is agreeing to forfeit, are subject to forfeiture as property used or intended to be used in any manner or part to commit or to facilitate the commission of the offense to which Defendant is pleading guilty.

Defendant agrees to take all steps requested by the United States to pass clear title to these assets to the United States, and to testify truthfully in any forfeiture proceeding.

Defendant agrees to hold harmless all law enforcement agents/officers, and the United States, its agents, and its employees from any claims whatsoever arising in connection with the seizure and/or forfeiture of the assets listed above.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets that Defendant is agreeing to forfeit in this Plea Agreement. Defendant waives all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of these assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to forfeiture.

14. Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. Restitution

The United States and Defendant agree that restitution is required pursuant to 18 U.S.C. §§ 2259, 3663, 3664. Defendant acknowledges that restitution is

PLEA AGREEMENT - 22

mandatory, without regard to Defendant's economic situation, to identifiable victims who suffer ongoing injury by virtue of child pornography images depicting them circulating on the Internet indefinitely, in amounts that comport with Defendant's relative role in the causal process that underlies the general losses of the victims. *Paroline v. United States*, 572 U.S. 464 (2014); 18 U.S.C. § 2259.

Pursuant to 18 U.S.C. § 3663(a)(3), in exchange for the United States dismissing counts and/or agreeing not to bring additional charges, Defendant voluntarily agrees to pay restitution to all victims of child pornography that Defendant distributed, received, and/or possessed, as set forth in the discovery in this case, whether or not Defendant pleads guilty to counts charging that specific conduct, and whether or not such counts are foregone pursuant to this Plea Agreement.

Defendant understands that for purposes of 18 U.S.C. § 2259, "victim" means the individual harmed as a result of a commission of the crime, including, in the case of a victim who is under 18 years of age, the legal guardian of the victim. The United States and Defendant also hereby stipulate and agree that the Court shall order full restitution, as appropriate, to any entity, organization, insurance company, individual, and/or medical provider who provided medical services and/or funds related to the treatment of any victim.

For any victim against whom Defendant's conduct occurred on or after December 7, 2018, Defendant agrees that such victims shall be entitled to restitution as if the AVAA applied to Defendant's conduct and agrees that the Court should order restitution in an amount that reflects Defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000 per victim.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether

PLEA AGREEMENT - 23

counts associated with such losses will be dismissed as part of this Plea Agreement.

With respect to restitution, the United States and Defendant agree to the following:

a.    Restitution Amount and Interest

The United States and Defendant stipulate and agree that the Court should order restitution in an amount no less than the amounts contained in the chart below, and that interest on this restitution amount, if any, should be waived.

|    | Series | Agreed Restitution Amount |
|----|--------|---------------------------|
| 1. | Lexie | $3,000 |
| 2. | Misty | $10,000 |
| 3. | MotorCouch1 | $7,500 |
| 4. | Tara | $10,000 |

Defendant acknowledges and agrees that if any of his other victims come forward with restitution requests prior to the date sentence is imposed, the Court may impose restitution in the amounts requested by those victims without violating the terms of this Plea Agreement, up to $10,000 per victim seeking restitution. Defendant acknowledges, agrees, and affirms that the chart immediately above, combined with the $10,000 cap on restitution for any additional victims who come forward with restitution requests prior to the imposition of sentence, and the known potential number of victims that could possibly come forward, constitutes "a reasonably accurate estimate of the amount of the restitution order to which he is exposed at the time he agreed to the appeal waiver" at the time of Defendant's entry of guilty plea and appeal waiver under *United States v. Lo*, 839 F.3d 777, 787 (9th Cir. 2016) and its progeny.  Accordingly, Defendant acknowledges that he is

PLEA AGREEMENT - 24

knowingly and voluntarily waiving all appeals and challenges to the Court's restitution order as set forth herein.

b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.

If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's

PLEA AGREEMENT - 25

Office to access records to verify the financial information.

### d.    Obligations, Authorizations, and Notifications

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant acknowledges and understands that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until Defendant's fine and restitution orders are paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which

PLEA AGREEMENT - 26

Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

16.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    Defendant Moving for Early Termination of Supervised Release Constitutes a Breach of This Plea Agreement

Defendant acknowledges that a lengthy term of Supervised Release is an essential part of the agreement between Defendant and the United States. In exchange for the benefits Defendant is receiving by entering into this Plea Agreement, Defendant hereby agrees not to file a motion for early termination of Supervised Release at any time. Defendant understands, acknowledges, and agrees that Defendant's filing of a motion for early termination of Supervised Release will constitute immediate breach of this Plea Agreement, and Defendant agrees not to challenge or object to a motion by the United States seeking a judicial finding of breach. Defendant understands and acknowledges that if Defendant breaches this

PLEA AGREEMENT - 27

Plea Agreement by filing a motion for early termination of supervised release, then:

  a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

  b. The United States may prosecute Defendant on all available charges;

  c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

  d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

 The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

 Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

 Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

 19. <u>AVAA Special Assessments</u>

 Defendant understands that Defendant will be required to pay a mandatory special assessment of no more than $17,000, pursuant to the Amy, Vicky and Andy Child Pornography Victim Assistance Act of 2018.

PLEA AGREEMENT - 28

20.    Sex Offender Registration

Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon release from prison as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d).

Defendant also understands that independent of Defendant's term of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's lifetime.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will keep Defendant's registration current with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will notify and verify with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours, of changes to Defendant's name, place of residence, place of employment, education, or religious worship, and any other information required by such agency or agencies.

Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such requirements. Defendant understands that under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon Defendant's release from confinement.

As a condition of Supervised Release, Defendant shall initially register with the state sex offender registration of the state of Defendant's release, and shall also register with the state sex offender agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.

Defendant shall provide proof of registration to the Probation Officer within 72 hours of release.

PLEA AGREEMENT - 29

21.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal any and all aspects of Defendant's conviction and/or the sentence the Court imposes, on any and all grounds, so long as the Court imposes a term of incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement.  Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement.  Defendant expressly waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, or indicates its intent to do so.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court, as set forth herein, including Defendant's agreements regarding his inability to challenge or appeal any of the Court's restitution orders as set forth in paragraph 15 of this Plea Agreement.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or

PLEA AGREEMENT - 30

entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

22.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

      a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

      b. The United States may prosecute Defendant on all available charges;

      c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

PLEA AGREEMENT - 31

d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

23.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

//
//
//
//
//
//

PLEA AGREEMENT - 32

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Deputy Attorney General of the United States

_____          2/5/26
Brandon Pang                              Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          01/08/2026
Risley Robert Bradshaw                    Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          1/8/2026
Jennifer Barnes                           Date
Attorney for Defendant

PLEA AGREEMENT - 33